DOUGLAS E. HEWLETT, JR. (SBN293438)
douglas.hewlett @arentfox.com
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

DAVID L. DUBROW (SBN 1879162) (*pro hac vice forthcoming*)
david.dubrow@arentfox.com
ANDREW DYKENS (SBN 5326798) (*pro hac vice forthcoming*)
andrew.dykens@arentfox.com
**ARENT FOX LLP**
1301 Avenue of the Americas, 42nd Floor
New York, NY 10119
Telephone:  212.484.3900
Facsimile:   212.484.3990

Attorneys for Plaintiff
AL OTRO LADO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL OTRO LADO, | Case No. 2:22-cv-01450 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| U.S. CUSTOMS AND BORDER PROTECTION; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Defendants. | |

## **INTRODUCTION**

1.     Plaintiff Al Otro Lado ("AOL") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.,* seeking injunctive and other appropriate relief to compel the United States Immigration and Customs Enforcement ("ICE") and United States Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants") to act on AOL's FOIA requests.

2.     On July 20, 2021, AOL submitted nearly identical FOIA requests to both CBP and ICE seeking specific information related to CBP and ICE's unlawful treatment and processing of migrants injured from falling from the border wall at the southern border ("the Requests").

3.     CBP denied the portion of AOL's CBP Request seeking expedited processing almost immediately after AOL filed it despite copious evidence included in the Request that "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

4.     Seven months have passed since AOL filed both Requests with CBP and ICE and yet, to date, still neither CBP nor ICE have issued determinations with regard to either Request.  As a result, Defendants still have failed to produce even a single document in response to the Requests, and they have not communicated to AOL anything regarding the disposition of their Requests other than CBP's cursory, conclusory email denying the expedited processing of the Requests.  Far more than the statutorily-allowed time has elapsed without a disposition or production of the requested records.

5.     AOL therefore files this Complaint seeking to compel CBP and ICE to issue determinations with regard to the Requests. The FOIA request involved in this case is ***critically urgent*** because Defendants' failure to adequately medically treat severely injured migrants, and/or expulsion of these severely injured migrants who have fallen from the border wall, is ***still*** ongoing.  Defendants' illegal practice

threatens these migrants' lives and safety, and risks their development of more serious complications as a result of their injuries.

**PARTIES**

6.      Plaintiff Al Otro Lado is a non-profit, non-partisan organization based primarily in Los Angeles, California. Al Otro Lado is a legal services organization serving indigent deportees, migrants, refugees, and their families. Al Otro Lado's mission is to coordinate and to provide screening, advocacy and legal representation for individuals in immigration proceedings and detained by DHS, to seek redress for civil rights violations, and to provide assistance with other legal and social service needs. Al Otro Lado regularly provides information and analysis to the media, the general public, and human rights monitoring bodies and disseminates information about its work and conditions on the U.S.-Mexico border and in immigration detention through its various social media accounts and website.[1] Disseminating information to the public is a critical component of Al Otro Lado's work. Al Otro Lado does this at no cost to the public.

7.      Defendant CBP is a component of the U.S. Department of Homeland Security ("DHS") and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP has possession of and control over the records requested by AOL.

8.      Defendant ICE is a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE also has possession of and control over the records requested by AOL.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

---

[1] *See* Al Otro Lado, Twitter, https://twitter.com/AlOtroLado_Org; Al Otro Lado, Instagram, https://www.instagram.com/alotrolado_org; Al Otro Lado, Facebook, https://www.facebook.com/AlOtroLadoOrg/; Al Otro Lado, https://alotrolado.org/.

10.     Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) as AOL resides in and has its principal place of business in this district.

11.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), CBP and ICE have constructively denied AOL's Requests because they have not issued determinations as to either request.

## STATUTORY FRAMEWORK

12.     Any member of the public may request records from an agency of the United States under FOIA. An agency that receives a FOIA request must issue a determination in writing to the requester within 20 business days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i).  In its determination, the agency must: inform the AOL as to whether it intends to comply with the request; provide reasons for its determination; and inform the requester of his or her right to appeal the determination. *Id.*  FOIA provides for an extension of this deadline "[i]n unusual circumstances" but limits this extension to "ten working days."  5 U.S.C. § 552(a)(6)(B)(i).

13.     A "determination" demands "more than mere acknowledging receipt of the Request and stating the agency will produce any non-exempt records that it may later locate." *Electronic Privacy Information Center v. Department of Justice*, 15 F.Supp.3d 32, 40 (D.D.C. 2014).  Rather, "in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*").

14.     DHS components must process FOIA requests on an expedited basis the requester meets any one of four criteria related to: (1) imminent threats to life and physical human safety; (2) an urgency to inform the public about an actual federal

government activity; (3) the loss of substantial due process rights; or (4) a matter of widespread media interest in which there exists possible questions about the government's integrity which could affect public confidence. 6 C.F.R. § 5.5(e); 5 U.S.C. § 552(a)(6)(E).  A component agency is required to notify the requester of its decision regarding expedited processing within ten days of receipt of the request for expedited processing.   6 C.F.R. § 5.5(e)(4).

15.    A FOIA requester is deemed to have exhausted all administrative remedies if the agency fails to comply with the request within statutory time limits. 5 U.S.C. § 552(a)(6)(C)(i).

16.    FOIA requires an agency to disclose in a timely manner, in response to a FOIA request, all records that do not fall within nine narrowly construed statutory exemptions.  5 U.S.C. § 552 (a)(3)(A); 5 U.S.C. § 552(b)(1)-(9).  FOIA also requires an agency to make a reasonable search for responsive records.   5 U.S.C. § 552(a)(3)(C).

## STATEMENT OF FACTS

**A.    The Government's Failure to Treat Individuals Suffering Border-Wall Falls, Injuries, & Resulting Deaths**

17.    In the past year, the media has reported multiple incidents of injuries and deaths along the U.S.-Mexico border as migrants cross to seek safety in the United States.   In many instances, instead of transporting injured migrants to hospitals for proper medical treatment, CBP and ICE have dumped them at volunteer-run organizations not equipped to provide the medical care needed for such grave and often life-threatening injuries.   In others, CBP and ICE have taken injured migrants into custody and refused to provide them adequate medical care, or otherwise left at border crossings, leaving them helpless and often in excruciating pain.   During interviews with the media, CBP officers have denied the severity of these injuries or denied their existence altogether.   Described below are only a few examples of incidents reported in the past year and a half.

18.     In February 2020, a 19-year-old pregnant woman from Guatemala, fell while attempting to climb a border fence in a desperate attempt to cross into the United States. She and her unborn child died a few days later.[2]

19.     In August 2020, a 33-year-old Mexican man fell from the border and died from his injuries while in CBP custody.[3]

20.     In February 2021, two men fell from the border wall and suffered serious injuries, including broken ankles in both legs, broken tendons, and a fractured back and pelvis.  Despite the fact that these men were in pain and unable to walk, CBP did not transport them to a hospital.  Instead, CBP expelled them to Mexico, dropping them off at a border crossing nearly 90 miles from where they fell from the wall.  Despite apparent and clear indications of their injuries, CBP told reporters that neither individual "presented illness or injury."[4]

21.     That same month, a Yemeni asylum seeker fell off the border wall and suffered severe back and head injuries that required hospitalization.  CBP nonetheless expelled the asylum seeker to Tijuana without that follow-up care.  *Id.*

22.     In March of 2021**,** CBP expelled an 18-year-old Salvadoran asylum seeker who attempted to cross into the U.S. after being kidnapped twice in Mexico, fell from the border wall, and suffered a severe back injury.  CBP expelled the

---

[2] Nick Miroff, *Pregnant woman dies after falling from border wall, a sign of migrants' desperation*, THE WASHINGTON POST (Mar. 12, 2020), https://www.washingtonpost.com/immigration/pregnant-woman-dies-border-wall/2020/03/12/8519752a-647b-11ea-912d-d98032ec8e25_story.html.

[3] Chantal da Silva, *Mexican Man, 33, Dies After Falling Off Border Wall in Arizona*, NEWSWEEK (Aug. 3, 2020,), https://www.newsweek.com/mexican-man-33-dies-after-falling-off-border-wall-arizona-1522431.

[4] Alfred Corchado, I*njured migrants say Border Patrol sent them back to Mexico after they fell off Trump's wall*, THE DALLAS MORNING NEWS (Feb. 13, 2021), https://www.dallasnews.com/news/immigration/2021/02/14/injured-migrants-say-border-patrol-sent-them-back-to-mexico-after-they-fell-off-trumps-wall/.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

hospital nightgown clad young man, in pain and barely ambulatory after spinal surgery, in the middle of the night to Ciudad Juárez.[5]

23.     Another asylum-seeking woman fell from the border wall while attempting to seek protection in the U.S., suffering a broken foot and a spinal fissure that possibly required surgery.[6]

**B.      The FOIA Requests**

24.     On July 20, 2021, AOLs submitted two nearly identical FOIA requests, one each to CBP and ICE, seeking Defendants' records related to their treatment and processing of individuals who suffered injuries by falling from the border wall.

25.     CBP and ICE assigned Case Numbers CBP-2021-086056 and 2021-ICFO-38446 to the requests.

26.     Specifically, AOL sought the following records, among other things:

1.     All policies and/or formal or informal guidance related to the **treatment** — including but not limited to detention, parole, transportation, and access to medical services — of:

   i.     migrants injured as a result of falling or being dropped from the US-Mexican border wall/fence or crossing the border wall/fence in another manner causing serious physical or cognitive injury, including but not limited to fractured or broken bones, spinal injuries, partial or total paralysis, concussion, and other brain injury;

   ii.    migrants who Border Patrol or CBP encounters and/or apprehends within one (1) mile of the border wall/fence who require on-site medical care and/or transportation to a hospital, medical clinic, or other facility for medical care;

2.     All records reflecting any data or statistics concerning the total number of people who CBP and/or ICE have

---

[5] Human Rights First, et al., *Failure to Protect: Biden Administration Continues Illegal Trump Policy to Block and Expel Asylum Seekers to Danger* (Apr. 21, 2021), https://www.humanrightsfirst.org/sites/default/files/FailuretoProtect.4.20.21.pdf, at 21.

[6] *See* note 5, *supra*.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

encountered within one (1) mile of the US-Mexican border wall who were injured due to falling from the border wall, or possibly due to falling from the border wall, and/or who required on-site emergency medical care and/or transportation to a medical facility due to injuries related to falling from the border wall or injuries of unknown origin, within the following parameters:

    i.      On a monthly basis, from January 1, 2019 through the present;

    ii.      Separately, in each of the El Centro, El Paso, and San Diego border sectors; and

    iii.      Totals by each sector, and overall.

3.      All records, including but not limited to significant incident reports, related to any of the incidents listed in request (2).

4.      All records reflecting any data or statistics concerning the aggregate demographic breakdown of the migrants within the parameters described in request (2), including:

    i.      Nationality;
    ii.      Age;
    iii.      Gender;
    iv.      Sex;
    v.      Race;
    vi.      Primary Language;
    vii.      Indigenous status;

5.      All records reflecting any data or statistics concerning how many of the migrants within the parameters described in request (2) were transported to a hospital or other medical facility by:

    i.      Ambulance
    ii.      Medical airlift
    iii.      CBP or ICE vehicle.

6.      All records reflecting any data or statistics concerning how many of the migrants within the parameters described in request (2) were treated for and/or diagnosed with any of the following conditions:

    i.      Lost mobility/inability to walk and/or stand, whether temporarily or permanently;

ii.    Bleeding and/or hemorrhage;
iii.   Severe bleeding and/or hemorrhage;
iv.    Brain injury;
v.     Cognitive deficits;
vi.    Cranial/skull fracture
vii.   Spinal cord injury
viii.  Back injury
ix.    Miscarriage and/or loss of pregnancy
x.     Broken or fractured bones
xi.    Monoplegia (paralysis in only one arm or leg)
xii.   Hemiplegia (paralysis affecting one arm and one leg on the same side of the body)
xiii.  Paraplegia (paralysis in both of the legs)
xiv.   Quadriplegia or tetraplegia (paralysis in both of the arms and both of the legs);
xv.    Any other serious or traumatic condition;

7.    All records reflecting any data or statistics concerning how many of the migrants within the parameters described in request ultimately died;

8.    All records reflecting any data or statistics concerning how many of the migrants within the parameters described above in request (2) were expelled or deported from the United States within:
i.     1 day
ii.    2 days
iii.   3 days
iv.    1 week
v.     2 weeks
vi.    3 weeks
vii.   1 month
viii.  2 months
ix.    3 months;

9.    All records reflecting any data or statistics concerning how many of the migrants within the parameters described above in request (2) remain detained;

10.   All records reflecting any data or statistics concerning how many of the migrants within the parameters described

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

above in request (2) were released to a shelter, community organization, sponsor, family member, nursing or medical care facility, or other non-detained setting;

11. All records reflecting any data or statistics concerning how many of the migrants within the parameters described above in request (2) stated a fear of removal from the United States or of return to any country outside the United States, were asked if they had such fear, or otherwise were processed in such a manner as to inform them of their rights to ask for asylum or other protection from removal and were in fact given a meaningful right to ask for asylum or other protection from removal.[7]

27. AOL also sought expedited processing of its Requests by CBP and ICE and provided detailed explanations of why the Request satisfies all four of DHS's requirements for expedited processing: (1) circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to life and physical human safety; (2) an urgency to inform the public about an actual federal government activity; (3) the loss of substantial due process rights (namely access to the asylum process as described above); and (4) a matter of widespread media interest in which there exists possible questions about the government's integrity which could affect public confidence.  5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e).

28. AOL's Requests explained that any delay of disclosing the requested documents "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."  6 C.F.R. § 5.5(e)(1)(i).  Among other things, AOL highlighted the multiple recorded instances of migrants who have died from falling off the border wall, as recently as April 8, 2021. AOL also described CBP officers' egregious treatment of seriously injured migrants, commanding them to walk despite their injuries, or expelling them to Mexico instead of transporting them to obtain critical medical care. Informing the public about how CBP and ICE plans for and

---

[7] A copy of these requests is attached hereto as **Exhibit 1**.

responds to such injuries may prevent incidents like this from befalling individuals in the near future.

29.    Second, AOL's Requests explained that AOL is primarily engaged in disseminating information   and that information about government response to border wall falls is urgently needed by the public.   6 C.F.R. § 5.5(e)(1)(ii) AOL disseminates its clients as it provides information to both the public and their broad client bases, has a firm intention of expanding its dissemination activities by publishing written materials for its client base in the future, and publishes information in public reports. Disseminating information to the public is a critical component of AOL's work.   AOL gathers information about issues affecting immigrants, uses editorial skills to turn that information into a form that can be easily accessed by the public, and disseminates that information.   AOL regularly informs the public about immigration issues by making its staff available for media interviews and through reports that it authors and disseminates.[8]   AOL also regularly disseminates

---

[8]  *Erika Pinheiro on situation at US-Mexico border,* BBC World News America; (Mar. 5, 2021), https://www.bbc.co.uk/programmes/p098w8t2?fbclid=IwAR1QsMo8wQ4zaNHkd gn2mmXnyMd1U1SYFWm90Gd_aXEU8QsjXSzDkCdZ0T6Y; Camilo Montoya-Galvez and Nicole Sganga, *Biden says he wants to ramp up expulsions of migrant families, but most are being allowed to stay*, CBS News, (Mar. 26, 2021), https://www.cbsnews.com/news/immigration-migrant-families-at-border-allowed-to-stay-under-biden/; *U.S. Extends Temporary Protected Status For Thousands Of Haitian Migrant*s, NPR, (May 24, 2021), https://www.nprillinois.org/post/us-extends-temporary-protected-status-thousands-haitian-migrants#stream/0.*;    What's really happening at the US-Mexico border — and how we can do better*, TED, Sep. 2019, https://www.ted.com/talks/erika_pinheiro_what_s_really_happening_at_the_us_me xico_border_and_how_we_can_do_better; *Black, Pregnant, and Detained*, RAICES, (Mar. 4, 2021), https://www.raicestexas.org/2021/03/04/pregnant-and-detained/; *Hundreds of Mississippi Immigrants Endangered in Adams County Detention Center COVID Outbreak,* Mississippi Center for Justice, (May 19. 2021), https://mscenterforjustice.org/hundreds-of-mississippi-immigrants-endangered-in-adams-county-detention-center-covid-outbreak/.

immigration related information to over 57,000 people through its social media accounts.[9]

30.     The release of the records AOL seeks is urgently needed as they will significantly contribute to public understanding of government operations and activities related to the processing and treatment of seriously injured migrants. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Government operations of this nature are of special importance to the public because the public has limited access and understanding of the prevalence of these incidents. The public also has an interest in this information to the extent that the requested information assists attorneys, immigrants, and the general public in understanding how CBP and ICE are expelling individuals without any consideration of humanitarian concerns or the opportunity to explain why they should be entitled to remain in the United States.

31.     Third, the Requests explained that any delay here will cause the continued "loss of substantial due process rights." 6 C.F.R. § 5.5(e)(1)(iii). Any noncitizen "who is physically present in the United States . . . irrespective of such [noncitizen]'s status, may apply for asylum in accordance with this section." 8 U.S.C. § 1158(a)(1). However, Defendants expel migrants to Mexico despite their claims of asylum and regardless of serious physical injuries related to falling from the border wall. Such treatment not only offends human dignity and humanitarian concerns, but it violates migrants' substantive due process rights to seek asylum. *See Maldonado-Perez v. INS*, 865 F.2d 328, 332 (D.C. Cir. 1989).

32.     Lastly, the Requests explained that the records sought concerned "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(iv). Multiple national publications have written about the government's treatment of migrants injured or killed by falling from the border wall, sometimes

---

[9] *See supra* n.1.

without providing those injured individuals access to medical care.  The issue is clearly one of widespread and exceptional media interest, and the government's callous disregard for the rights, safety, health, medical care, and lives of migrants so injured casts serious questions about the government's integrity in such a way that affects public confidence.

33.     On July 22, 2021, CBP denied AOL's request for expedited processing of the Request without explanation or elaboration.

34.     ICE has yet to issue any determination with regard to AOL's expedited processing request.

35.     As of the filing of this Complaint, neither CBP nor ICE has issued any determination or produced any records regarding either Request.

## COUNT ONE
### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Issue Timely Determinations

36.     AOL re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

37.     AOL properly requested records within the possession, custody, and control of Defendants.

38.     Defendants violated FOIA, 5 U.S.C. § 552(a)(6)(A) by failing to issue timely determinations in response to AOL's Requests. Defendants are obligated under 5 U.S.C. § 552(a)(6)(A)(i) to make a determination regarding the Request within 20 business days or 30 business days if an extension is invoked.

39.     Defendants have not issued any determination as to AOL's Requests though they have remained pending for seven months.

40.     Defendant ICE has also failed to issue a determination regarding request for expedited processing.

41.     When an agency fails to make a determination within the statutory deadline, requesters are entitled to "immediate judicial supervision" of their requests.

1  *Daily Caller v. U.S. Dep't of State*, 152 F.Supp.3d 1, 10 (D.D.C. 2015). "[T]he

2  district court's supervision will aim to ensure that the agency is processing a request

3  with 'due diligence' *and* as quickly 'as practicable.'" *Protect Democracy Project,*

4  *Inc. v. U.S. Dep't of Def.*, 263 F.Supp.3d 293, 302 (D.D.C 2017) (quoting 5 U.S.C. §

5  552(a)(6)(E)(iii)). Accordingly, AOL is entitled to judicial review in this case.

6
## COUNT TWO
### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Grant Expedited Processing

7

8

9  42.    AOL re-alleges and incorporates by reference all the foregoing

10  paragraphs in this Complaint as though fully set forth herein.

11  43.    AOL properly requested records within the possession, custody, and

12  control of CBP on an expedited basis.

13  44.    CBP is an agency subject to FOIA, and it must process FOIA requests

14  on an expedited basis pursuant to the requirements of FOIA and its regulations.

15  45.    Defendant CBP has violated FOIA, 5 U.S.C. § 552(a)(6)(e) and

16  corresponding regulations,   6 C.F.R. § 5.5(e)(1), by failing to grant AOL's CBP

17  request for expedited processing despite detailed explanations as to why the Request

18  conformed with DHS regulations regarding expedited processing.

19
## COUNT THREE
### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Conduct an Adequate Search for Responsive Records

20

21

22  46.    AOL re-alleges and incorporates by reference all the foregoing

23  paragraphs in this Complaint as though fully set forth herein.

24  47.    AOL properly requested records within the possession, custody, and

25  control of Defendants.

26  48.    Defendants are agencies subject to FOIA and therefore must make

27  reasonable efforts to search for requested records and to promptly make the requested

28  records available.  5 U.S.C. § 552(a)(3)(C).

49.     Defendants' failure to conduct an adequate search for responsive records violate FOIA.

## COUNT FOUR
### Violation of FOIA, 5 U.S.C. § 552
### for Improper Withholding of Non-Exempt Responsive Records

50.     AOL re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

51.     AOL properly requested records within the possession, custody, and control of Defendants.

52.     Defendants are agencies subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide a lawful reason for withholding any records. 5 U.S.C. §§ 552(a)(3)(A), (a)(8)(A).

53.     Defendants' failure to provide all non-exempt responsive records violate FOIA.

## PRAYER FOR RELIEF

For these reasons, AOL asks that the Court grant the following relief:

A.     Declare that Defendants CBP and ICE have failed to: timely respond to Plaintiff's requests for agency records; grant expediting processing of Plaintiff's requests; conduct an adequate search for responsive records; and produce non-exempt responsive records, each in violation of FOIA, 5 U.S.C. § 552;

B.     Order Defendants to conduct a reasonable search for records responsive to Plaintiff's FOIA requests;

C.     Order Defendants to produce, within 20 days of the Court's order, or by a date deemed appropriate by the Court, non-exempt records responsive to Plaintiff's FOIA requests and indexes justifying the withholding of responsive records pursuant to FOIA exemptions;

D.     Order Defendants to grant expedited processing of the Requests pursuant to 5 U.S.C. § 552(a)(6)(E)(iii) and 6 C.F.R. § 5.5(e);

1        E.      Enjoin Defendants from continuing to withhold any and all non-

2    exempt records responsive to Plaintiff's FOIA requests;

3        F.      Award Plaintiff reasonable attorneys' fees and other litigation costs

4    reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

5    Award all other and further relief the Court deems just and proper.

6

7    Dated: March 3, 2022              Respectfully submitted,

8                          **ARENT FOX LLP**

9

10                         By:  */s/Douglas E. Hewlett, Jr.*

11                         Douglas E. Hewlett, Jr.

                        David L. Dubrow (*pro hac vice forthcoming*)

12                         Andrew Dykens (*pro hac vice forthcoming*)

13                         Attorneys for Plaintiff

                      AL OTRO LADO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF